We're here for the in-bank argument in Harrison v. Gillespie. Counsel ready? Please identify yourself for the record and proceed. Good morning, Your Honor. Joanell Thomas, appearing on behalf of the appellant, James Harrison. How are you? Thank you. Are we picking up? Yes, I think it's always useful to. Okay. This case presents the single issue of whether Mr. Harrison was entitled to know whether his jury had made a unanimous and final decision as to whether or not he should receive the death penalty. Before discussing prongs, tests, elements, I think it's important that we start at the beginning, and that is with the text of the Fifth Amendment. Well, can we start even earlier on this matter? Why isn't this case younger, Boggs? Because. It's an ongoing prosecution, state criminal prosecution. That's correct, Your Honor. But because the double jeopardy right is unique in that it bars not only a second conviction or a second punishment, but also a second prosecution, there's an exception to the younger abstention doctrine that has been recognized repeatedly by the court. Not the Supreme Court, right? The Supreme Court has recognized an exception for double jeopardy in the Abney case. Justice Flanagan, Judge Justice Brennan, one justice's opinion said he thought younger didn't apply. This is a Woolhawk v. Flanagan, a 1980 case, 48 U.S., 1323. But there was one justice thinking that maybe it didn't. I'm just wondering, isn't this a kind of interference with an ongoing state prosecution that federal courts ought not to engage in? I mean, this can all be reviewed after, if there's a death sentence. This can all be reviewed, but with habeas. That would not be a sufficient remedy for the violation of Mr. Harrison's constitutional right to not face a second prosecution in which his life is in jeopardy. Ms. Thomas, I'm really interested in how you're going to cabin what you're proposing here to a death penalty situation. If the Constitution requires a polling of a jury in these circumstances, why wouldn't every case, regardless of its seriousness in terms of the penalty imposed, permit, indeed constitutionally require, a polling of a jury to determine whether there had been a ruling out of some one or other charge so that there would be no double jeopardy? I think we need to start with the Bullington decision in which the Supreme Court recognized that the death penalty is unique in its severity and its finality. I appreciate the fact that the death penalty is unique in jurisprudence, but what's the limiting principle here? The double jeopardy concept in the Constitution is not limited to capital cases, is it? As to sentencing, I agree with you, but as to sentencing... Okay, that's my point. I realize that there are unique sentencing procedures, but the concept, though. If we agree with you, why wouldn't somebody in a rape case, for example, be able to say that any lesser included offense, you're entitled to poll the jury to be sure that there has been no verdict reached? What then happens to the jury system? We've got kind of an ongoing polling situation? Do we do it all the time? How many hours does the jury have to deliberate before you're entitled to a poll? I think there are two ways to answer that question. The broad answer is yes. There should be a right to polling when a jury is about to be disbanded, when they're about to be excused from their duty, to say, did you reach a final decision as to the greater offense? But as to the narrow question, and the Supreme Court has repeatedly said each case has to be adjudicated on its facts. You do agree that the concept does apply, so basically we're opening up a constitutional can of worms here that would go across the whole criminal spectrum. Is that really what you're proposing? That would be the broad rule. There is a narrow rule which would not require that. Why can't you just say that this weighs on the balancing scale of discretion, and that's where the control comes in? The stakes are indisputably high in this. Leave to another case to question whether that principle is a limiting principle or not. And that would be the narrow rule, where a jury is sent out two notes stating we are split 9 to 3 between life without and life with, under these facts, these particular facts. That looks a whole lot like the jury has excluded the death penalty. And looking at the particular facts of this case, under the judge in a sound exercise of discretion was required to poll. It sounds like they also ruled out the possibility of a sentence less than life. Should that stick in the future as well? Under the Montgomery, California decision, as well as Bullington, in the sentencing context, jeopardy only attaches to the death decision. It does not apply to lesser sentencing options. Counsel, I kind of look at this case narrowly, but from another perspective, which is, did the district court properly make the findings required under our test in Colley and Chapman for finding a manifest necessity to declare a mistrial? Or did she abuse her discretion in declaring a mistrial regardless of the polling? Because when I went back and read the record in this case, she not only did not say there was a manifest necessity. I know you don't have to use the magic words, but she didn't even come close to weighing the factors, particularly the factors of what is the least harmful alternative to the defendant, what's the state's motivation in pursuing that, as opposed to allowing polling. There's many factors here that, you know, I don't know if you've made this argument before, but I could see a narrow ruling to send grounds of manifest necessity. Your Honor, I think that's correct, and I think here we have repeatedly argued that the manifest necessity test was not established. I think looking at the record here, it's not clear that the trial court understood that she had discretion. The state repeatedly argued that Nevada law precluded polling, precluded further inquiry. In fact, it does not. But the trial judge was not very clear as to whether she, in fact, felt that the state was correct in that argument, that she had no choice. Counsel, has the Supreme Court ever overturned a trial court's determination about a mistrial with respect to the manifest necessity standard? I can't recall a case in which they did. Didn't the Supreme Court just recently say in Renico, we're just going to stay out of this? We give the trial judges enormous discretion here. If they look at these things, you know, we're going to just let them go through it. Unless it's manifestly unreasonable, just out of the ballpark, we're not going to touch it. And that's the recent 2010 case. Your Honor, respectfully, I believe Renico is about the limitations of post-trial, habeas review of a state court decision, and whether a state Supreme Court's decision was clearly contrary to established Supreme Court law. Those standards don't apply to this case. This Court has de novo review. I think had the Renico decision been reviewed under a de novo review, it very likely would have had a different result. But what I'm having trouble with is seeing how the polling question hooks up to manifest necessity determination. Because it requires a prior determination that you had to essentially split up the verdict. In other words, there's no doubt that it was proper to have a mistrial here, right? I disagree, Your Honor. I think some mistrial, correct. So that's really not the issue. The issue is whether there was an obligation to split up the questions before the jury in declaring a mistrial. And the question really is, is that a manifest necessity problem? In the death penalty context especially, I believe that it is. And under Stata zone, in which the Supreme Court noted that the defendant there did not insist upon a verdict. Here, the defendant did insist upon a verdict. Well, why wasn't that too late? Why wasn't the time to ask that question at a time that the court gave the verdict form to the jury? Petitioner here, but defendant at the time could have said, Your Honor, the way the verdict forms are set up, there's no decision point for the jury to say we have decided to set aside a death penalty. It could have been asked that question. A verdict form could have been prepared where they go through and they, as they did, find aggravating circumstances, then mitigating circumstances. There could have been another form given to them. Do the aggravating circumstances clearly outweigh the mitigating circumstances? Or I forget how it is in Nevada law. Is it the other way around? And ask the outweighing question going in. And then the jury would have had a decision point to make. Do we go for death or do we put death aside? Why hasn't the defendant, the petitioner here, defendant in the state court, waived a determination of that question by failing to request a verdict form that specifically asked the jury that question? Your Honor, I agree. That would have been the better course. But it wasn't too late. Well, it would not just have been the better course. It would have actually presented that specific question to the jury for a discrete decision. That's correct. Such a verdict form would have. Why isn't that, by not asking for that and being denied that up front, why isn't that waived? I think that, again, going back to the long line of cases saying that each case has to be evaluated upon its facts. Well, I'm asking about this case. Let me ask you, why would it waive it if they could obtain the same result by asking the foreman of the jury? Why is it that by not asking for one of those separate forms, why do you think it's waived when they have the opportunity to have the judge ask that same question of the jury? I don't think it's waived. Well, no, no. But explain to me why you don't think it's waived. Why aren't questions like that to be asked before the jury has gone through deliberations, and asking the question anew when they're in the middle of the deliberation, of course, in some way interferes with the jury's deliberative process, because it says this is something we're now interested in. Why isn't the time to ask for something like that up front before we know anything about what the jury is thinking? It certainly could have been asked on the front end. Well, don't keep saying it could have been asked. The question is, when the jury has to fill out forms that answer two questions, and in order to then know which form to go to next, they have to answer the third question, why would you waive that right to know the answer to the third when you have an opportunity to find out by asking them before it's dismissed? What do you see in that that has to do with waiver? I don't believe Mr. Harrison waived anything. But he could have asked for that. He could have. You agree with that. And he could have also asked when a jury sent out notes saying we're split between like with and like without, as he did here, he asked, did you agree to a final unanimous decision as to the weighing equation? Did you reach a final unanimous decision against the death penalty? Under Boynton, under Satizon, and under Arizona Jury Washington, he was entitled to have those questions answered. Only if it's assumed that's a separate verdict. What makes that a separate verdict? If the parties didn't identify that as a separate question going in, why should it be perceived to be a separate question coming out? I think that the vagaries of Nevada's unique capital sentencing scheme, which allows a jury not just to make the critical decision of is the defendant acquitted of the death penalty or not, but then to also go on and make the sentencing decisions, which Nevada doesn't have to do but does allow and does provide for, cannot distract from the primary issue, which is Mr. Harrison is entitled to know, did his jury acquit him of the death penalty? Is there a constitutional requirement to have special verdict forms of the kind that we have here? At all? No. Certainly not as to mitigators. I can't think of a case that says you have to have a verdict form as to aggravators. But essentially you are, because what you're saying is you're entitled to go in and ask the jury specific underlying questions about the verdict. So doesn't it follow that you're entitled to a special verdict form to identify those things up front? I think where a jury comes back and says we cannot reach a decision, at that point, before the district court declares a mistrial, before it does away with Mr. Harrison's right to a decision by this jury, this jury that's been with him for weeks, that's adjudicated his guilt, that's heard evidence and argument and been through a death qualification process and through a very heart-wrenching time as any capital case is, before that jury is released, Mr. Harrison is entitled to know, did they reach a decision on the death penalty? So I understand the rule you would be asking for would be essentially that in these unique circumstances, the defendant would be entitled to a partial verdict. Is that correct? I don't consider it to be a partial verdict to the death penalty. It's asking, did you reach a final decision after the death penalty? But the difficulty with that is that all of the Supreme Court's jurisprudence suggests that if you haven't actually reached a verdict, and there hasn't been a verdict yet in this case, that it's really a non-event. And how do you square your position in which you say, well, it's not really a partial verdict, it's a verdict, but you want a partial verdict because at the end of the day, the jury was going to make a determination, what is the sentence, correct? That's the ultimate verdict that this jury was asked to make. That's correct. Okay. But you want, in effect, a step along the way. So why isn't that a partial verdict? I'm having some trouble fitting this in with our double jeopardy jurisprudence. The Constitution does not require that a jury make a sentencing decision as to lesser sentences below death. That's a decision that could be left to judges. That's a decision that states are free to formulate as they will. But under Bullington, under Satizon, under Ring v. Arizona, some senator, be it judge or jury, has to make a decision. Should this defendant receive the death penalty? Well, actually, you're not saying it's not quite set up, quite that framework in the verdict. It's a step along the way. And I thought your argument really was that they had made a factual, a unanimous factual determination with respect to one element, critical element, which would therefore result in life as opposed to death. It would have ruled out, which is the mitigating factors outweighing the aggravating factor, which the verdict form showed that they had decided, against your client. So they weren't asked to decide yes or no specifically on death, but they were asked to make a finding, which the Supreme Court has said you can determine from implied findings of acquittal and the like. This is not an implied acquittal, but it is a finding of fact on a necessary element. I don't believe we know for certain, as a matter of record, where this jury came out on the weighing equation. Well, I know we don't, but that's because that's your whole point. Implied finding case, correct? We asked for both. We asked for a decision as to the eligibility decision as to weighing. We also asked for a decision as to the selection. But you do have, the court did know from the fact that the jury had found an aggravating factor that in a legal sense, your client was eligible to continue this as a death penalty case, correct? Respectfully honored, no. Not under Nevada law. Maybe my question was unclear. We do know for a fact that the jury found an aggravating factor. There's a verdict form that states that. It wasn't formally received in the manner that verdict forms normally are. That's because there wasn't a verdict, but in terms of an underlying factual finding, that partial verdict form or factual finding or whatever you want to call it made him eligible to have to continue the process towards a sentencing. Right. And in Nevada, there's one other eligibility determination that has to be made. Unlike many other states, I believe Arizona, Colorado, and Missouri also follow the two-step eligibility criteria. Does it matter whether that determination is, quote, factual or something else? And if so, why is it factual? The Nevada Supreme Court has repeatedly, for 25 years, the court has been saying that the decision of whether mitigators outweigh aggravators is a factual decision. Well, I said it was partially factual is what I saw. And it's partially factual because the mitigation part of it is certainly factual. But what about the weighing part of it? In Johnson v. State, the 2002 decision that's cited repeatedly in the brief, the Nevada Supreme Court made it clear that the weighing decision is part of the eligibility criteria. I thought that the court had clarified that it was also a moral question in a sense and not just a factual question, that it was a gestalt, a totality and not just factual. In McConnell, the court did find that the weighing does not need to be done to the beyond a reasonable standard. It did not overrule Johnson. It did not state that weighing is not part of the eligibility determination. What Johnson actually says is that the second finding regarding mitigating circumstances is necessary to authorize a gestalt. And we conclude that it is in part a factual determination, not merely discretionary weighing. That's correct. What does that mean? It doesn't matter. My ultimate question is, does it matter for your argument? I don't believe it does. I believe under Bullington, if the jury rejects the death penalty as a subjective selection decision, that counts. That matters. And although Satterjohn goes off and talks about elements, Bullington has never been overruled. It's still good law. In a sense, this is a pretty easy question. It's a pretty simple case. I take it as established law that if the jury had acquitted him of the death penalty, that is to say if the jury had decided that the mitigating factors outweighed the aggravating factor or factors and had done so unanimously, that would be an acquittal. And he is entitled under double jeopardy to be free of any later penalty phase with the death penalty on the table. So we know that if the jury did acquit him in that fashion, it's off the table. The only question in front of us is, is he entitled to know what the jury decided? And I believe the answer to that must be yes. And how do we know what the jury decided? As a formal matter, we don't. And how could polling reproduce what would happen within a jury room? If a jury has questions they're specifically supposed to answer, it's a formal process. And we can say this is a question. Are we agreed we've answered that question? If so, we can fill in that part of the form. But if they don't do that, how can we be confident that a jury has in fact reached a final decision that they would weigh factors in a certain way? I think the precise methodology of how that question is answered is a matter within the trial court's discretion. The trial court could elect a poll. They could send them back into the jury room with a specific task as they did in the Sellers case in Nevada. Did your client propose an amended verdict form at that point? Not in those terms. But he asked that the jury be questioned. If I may, I'd like to raise your hand. This gets back to the question Judge Fletcher was asking you about. If there is some sort of formal vote, and I'm rephrasing his question a little bit, where the jury is actually sort of required to take a vote and say is death off the table, then it's one thing, but if the process is much more amorphous, there's nothing about it because there's no verdict form that requires a vote on it, and the jury simply moves on and says, well, let's talk about penalties, and doesn't make a formal decision as to death, but yet nobody seems to say death, you know, none of the jurors advocate for death, then how do we really know? It's almost a metaphysical question about what is the intent of a group. You know, it's like when the legislature votes for something, you say, well, they voted for this particular statute. If they don't take a vote, then how do you know is there even such a thing as a group intent on the point? I absolutely agree. The point that the jury sent out notes saying we're split nine to three. Well, no, the jurors sent out notes. Right. I'm sorry, the jurors. There was a perception of some of the jurors. There was nothing signed by the jury as a whole, right? Certainly at that point the district court was obligated, the trial court, to step in as requested by Mr. Harrison and ask. Ask what? Would he have asked each juror whether the jury had decided or would he ask each juror what they thought? I think the question, again, I think the trial court has discretion to address that in the manner in which it may. Didn't the jury have an obligation to determine whether he was death penalty eligible after they made the first two decisions, before they would be given different sentencing options? It's not a metaphysical question. It's a decision they had to make after first deciding whether there was an aggravating factor, secondly deciding whether mitigating outweighed aggravating, and depending on that answer they got either one penalty sheet or another. Why would that necessarily be the case? Because juries can change their minds. They can talk and decide maybe, well, let's not consider the death penalty, and then they talk about the others and say, well, maybe that's not enough, and then they go back to the death penalty. The fact is we don't know here, do we? The instructions required the jury to go through a very formalized process, and part of that process was to do a weighing between mitigators and aggravators. That's not correct. That's not correct. In fact, the jury, if it chose in its discretion, in its mercy, to go for life, it did not have to make a determination that he is death eligible. They look at it. They do not, in fact, contrary to your saying yes to Judge Reinhardt, Judge Reinhardt was very incorrect in his statement. There was nothing in the jury's deliberative process that required a decision about whether he's death eligible or not before they can go ahead and consider what penalty to impose. It wasn't. They could just say, well, now that we made that decision, let's talk about penalty. I say life, 100 years, and then somebody else says something else, because penalties. That's not the way the jury instructions told the jury to go through this process. Those jury instructions said you need to make a decision as to aggravators. You need to make a decision as to mitigators. You need to make a decision as to weighing. After weighing, then you make the selection decision. One difficulty there is that when you were asked an earlier question about the aggravation, I interpreted your answer to mean, well, it's kind of irrelevant because it was a piece of paper and it wasn't really the final piece of paper. So I'm having trouble understanding how that didn't necessarily count or take on some prominence, and yet notes from two individual jurors might tip the balance here. We accepted that aggravating form, and I'm not disputing that. The central question under Bullington is, did the jury acquit? For whatever reason, did they acquit the defendant of the death penalty? The problem I have with this is that it's along the lines of what Judge Smith asked you, which is, okay, suppose they were polled. That would be a picture of how they felt or believed, what they believed at that moment. The process still goes on. Suppose the court, they were polled, and the court said, well, I don't find the factors exist that rise the level of mental simplicity to declare a mistrial, and then the jurors went back and kept talking. It's not that just because we have a form that's got all these mitigation factors and only one aggravation factor that we can just assume that the jury was going to not go back and say, okay, it's kind of like election polling. The polls are a point in time of deliberations that you have to wait to the end. You have to wait until Election Day to get the actual vote. And we never got there in this case. We needed to ask the question, did you reach a final unanimous decision? The jury could have said, no, we were still tentative, we were still debating, or the jury could have said, yes, we reached a final unanimous decision. It has to be binding unless the judge didn't suggest that you had a special verdict form on that. It has to be binding because under the Fifth Amendment, Mr. Harrison has a right to one proceeding, and there's no manifest necessity to declare it in this trial to discharge that jury without asking if they didn't reach that decision. What if in this circumstance they'd all said, yes, that's what we think, but we can't decide the lesser-than-death penalty, and the judge had sent them back to deliberate again? Are you saying that that very same jury would have been barred from changing its mind and imposing the death penalty? If that jury said, yes, we have made a unanimous and final decision, yes, they would be precluded from it. Even the same jury? Why? I think when you're weighing the interest here, you have Mr. Harrison's constitutional right to a single proceeding versus the state's right. Well, that's why I asked you about the single proceeding and the meaning. I guess I'm following up on Judge Wardlaw's question about what it means to have the jurors say, well, yes, we've talked about it, and we think that the mitigating factors outweigh, and if the judge had said, well, I think you should keep deliberating, so I'm going to send you back to deliberate. What constitutional principle would have prevented them from, after further deliberation, deciding that, in fact, the death penalty was appropriate? If it was the same jury. Judge Graber is asking you if the jury came back with a verdict and said to the judge, we have eliminated the death penalty. That's our final decision. He could say, I don't want to accept that verdict. Go back. I reject it. That's not what I asked. I just appreciated an answer to my question. I'm trying to find out if your principle applies, if it's the polling that you wanted and the same jury continues to deliberate whether they have, in the absence of a verdict form in which they've signed, or even a verdict form they can scratch it out and start over, as I understand it. Respectfully, Your Honor, that's just not our facts. This is a case where the judge. I'm trying to ask you a hypothetical question. It would be helpful to know if your position is that the same jury, if this were the same jury sent back to continue deliberations, whether they would have been precluded from reconsidering whether to impose the death penalty, even if they had said, well, we've talked about it and we think that the mitigating factors are stronger. I think that prior to discharging a jury, the court, the parties, the community is entitled. Do they have a decision for or against the death penalty? California law is set up that way. There's a separate special circumstances portion of the trial. There's a verdict on that, an official verdict, and then after that there's the penalty phase, which is discretionary largely. Okay. You're essentially saying that's sort of constitutionally required, and the question is why. Because under Satterthorne, under Billington, under the Fifth Amendment, Mr. Harrison has a right to a decision on whether this jury is unanimous against the death penalty. So you're essentially saying there's a constitutionally required three-part trial. That would be the broad rule. The narrow rule would be under these facts, with these juror notes, under this circumstances, more was required. Ms. Donnis, at the time that the judge was asked to poll the jurors, had the judge seen the aggravator form or the mitigator form? I don't believe she had. So the judge knew really nothing about what they had decided, other than you got those two notes that indicated that they were talking about these things. We later on had the indication from Mary Recy, the other juror, who said they'd never ruled out the death penalty. Your Honor, that came long after the jury was discharged. So just like the mitigator and the aggravator forms, the information that we know about this really came after the trial. The trial judge had some indications that they were talking about a particular thing, but nothing final. There was no verdict. I think in assessing if the district court abused her discretion, you have to look at it at the time she declared the mistrial. At that time, there were two juror notes saying that at least some of the jurors believed they were split between life with and life without. And following up on Judge Berzon's question, it's your position that on those facts that the Constitution requires that we find that there was an abuse of discretion by the judge and that there was, by definition, double jeopardy in your client. Is that right? That's correct. We'll give you a little time for rebuttal. But when you come back, I hope you will give us an answer to Judge Graber's question, which you never did. Thank you. Thank you. We'll hear from the State. Please record. I'm Steve Owens with the Clark County District Attorney's Office here on behalf of Respondent Appellees. The question here is not so much what constitutes an acquittal of the death penalty. You're not pressing a younger point here, a younger argument here? I think that does warrant some consideration. Did you raise an younger argument? I raised the point that I did not feel that he was in custody for purposes of – You looked at a younger argument. It's not a younger argument. You didn't raise it, and there's a good question as to whether younger is waivable. Judge Reinhart has an opinion now, so I could say it's not waivable. It is waivable, but I don't believe there's any Supreme Court – But in any event, you are not, in fact, actively pressing a younger point. I'm a little surprised because this is a fairly significant interference with a state prosecution, so I think that younger is – but you haven't raised the point. I am a state prosecutor, and I don't get out to federal court much, so this is unusual for me, and I think you're correct. I did not specifically raise a younger issue in this case. Are you familiar with younger? The younger abstention doctrine that the federal courts will defer ruling and let the state reach it? If there's a pending state proceeding, the federal court won't interfere with it. This seems to me a perfect case of application of younger. So the question to me is whether it's a waivable problem. Well, I would hope that it's not waivable. Certainly not an issue that I picked up on. But it's waivable or not waivable depending on whether you're going to win in front of us. It was my understanding that in a 2241 pretrial habeas petition, that this court would entertain double jeopardy issues on capital cases and that younger was not a problem for that reason. Is there one proceeding that's still pending, or are there two proceedings? There is one capital penalty hearing that has been stayed pending this court's ruling. The adjudication is over. The defendant was found guilty of first-degree murder. Mistrial was declared on the penalty phase only, and a new penalty phase was ordered, but that has been held in advance. It is correct, though, that there hasn't been, couldn't be, an appeal on the guilt phase yet because there's no verdict as such? There is no final judgment until the sentence is selected. So officially, he's really now in custody, and essentially pretrial custody because he hasn't been convicted? He is in custody pending resentencing. But he's in custody not pursuant to a verdict? Not pursuant to a verdict, that is true. So he really is in no different position for custody purposes than any other person bringing a double jeopardy claim where there's been no final judgment. You're beyond my understanding of Younger, and I'm not going to shed much light on that. We're not talking about Younger now. We're talking about your custody argument. You were trying to distinguish between this case and the kind of case in which we have approved. Wilson v. Bellequy, I think. Bellequy was the case. But this guy is actually even more obviously in custody and not pursuant to any state court judgment because there's been no state court judgment of any kind. True. He would be held in custody regardless of whether or not there was going to be a retrial of the death penalty. There has been no penalty selected, and he must be held and detained pretrial until… Unless the verdict is eventually a personal appeal. I think, if I understand correctly, what Judge Bergeson is saying, there's no final judgment. He's not being held in custody pursuant to any final judgment of conviction, right? I would agree. There has been no judgment of conviction in this case, yes. He's just like a pretrial detainee. He's just like somebody who's awaiting trial for a felony. He's awaiting resentencing. Well, not resentencing. He hasn't been sentenced at all, has he? Right. But he has had a verdict rendered against him. Have there been any post-trial motions with regard to the guilt phase, or is all that put off to after sentencing as well? The only post-trial motion was a motion to strike the death penalty that causes us to be here today. That's the only one that I'm aware of. I don't know of any other post-trial motions challenging the finding of guilt. So it is much more like the situation of somebody who's been adjudicated guilty by a jury and awaiting sentencing in the first instance. I think so, yes. The question here. Let's say he were to go forward with, you know, for whatever reason we did not intervene or this proceeding had not happened and then gone to another penalty hearing. What, if anything, of what happened in the first trial would have been deemed adjudicated? Would the mitigating and aggravating factors be deemed adjudicated for that purpose of the proceeding? No, absolutely not. This was not a bifurcated proceeding. There was no final adjudication on certainly. So even though the jury had a form and it said we find one aggravating factor, there were two possible aggravators and they find one, and that was checked and I believe signed. I have it here somewhere, but I believe it looks like a completed verdict form. And then they went ahead and they checked all of those mitigators, right? And they wrote an additional mitigator in by hand and signed that. If, again, barring what we do here, assuming nothing happens in federal court, as you go forward in state court, the jury would be barred by none of that? No, it needs to be one jury that determines the aggravators and the weighing and selects the punishment. So those previous determinations, which I would say are not final adjudications at all, we have those verdict forms. You're correct that they were not returned in court as formal verdicts. We're aware that that's the determinations that the jury made. However, they have no final effect for purposes of redoing the penalty here. Would there be a case that required them to fill out those forms when they came to the conclusion as opposed to at the end of the deliberation? Were they told they had to proceed in a sequential fashion and fill out the forms and sign them? That procedure is, I believe, for evidentiary purposes, not constitutionally. Are they required to make a determined first of the aggravators and then proceed to weighing? There is a process that is laid out for them, probably for simplicity. But what about with regards to the forms is what I'm asking. Were they told they had to fill out the forms sequentially? No. No. This is not a bifurcation. Nevada does allow bifurcated penalty hearings. We have done it in the past, and the Nevada Supreme Court has said that it is not constitutionally required that it be bifurcated. Some judges prefer bifurcation because it ensures that the jury only considers the appropriate evidence at the appropriate time for each of those determinations. Counsel, if the jury had filled out the aggravating form, that sheet, and instead of finding one aggravating factor, had found no aggravating factors, would that have been binding on a future penalty proceeding? Only if they had imposed a life sentence. So if they hadn't been able to decide on the sentence, but there were no aggravating factors, do you think that the person could be resentenced, tried for the death penalty again? The precedent that we have from the Supreme Court, it is not the imposition of a life sentence alone, but a life sentence coupled with factual findings that are like a guilty or not guilty in a guilt phase, and we have that for the finding of aggravators. But a finding on aggravators alone has no meaning absent a selection of a final sentence. But if there are no aggravators, is the person under Nevada law even eligible for the death penalty, if there are zero aggravating factors? Well, that would be a different case. That's what I was asking. I'm trying to understand the effect, if any, of those partial forms that we know are there, saying one aggravating factor, 24 mitigating factors. And I'm trying to figure out what effect, if any, you think they have. And I'm trying to figure out if you would agree that if the jury signed off saying there are none, whether a second death penalty sentencing proceeding could occur or not. They're never asked to simply return a finding on aggravators absent them first having selected a penalty. Would you please answer the question? You keep dodging. Would you please answer Judge Graber's question? I'm interested in the answer also. I don't intend to dodge it. I'm suggesting that they would never have been asked in Nevada whether they had filled out that aggravator form. But they did fill it out. I just want a yes or no answer to whether the person could be retried for the death penalty if that form had said zero aggravating factors and had been signed. In this case, if that one change in the facts were made, what would be the result? I don't intend to dodge it. I think you could retry them because that situation would never occur. They would never return that verdict form in court unless they had selected a sentence. And if they selected a sentence of life... So what is the function of the verdict forms? That's what's extremely bizarre about this. Only in support of a death sentence is that finding required. But on your construction of Nevada law, there should never be such verdict forms. You should just come back and say what sentence you selected. Why do we even... Are those verdict forms given to anybody? Suppose there was a verdict form filled out that said no aggravators and then suppose that they came back with a death sentence anyway. What would happen then? Well, the death sentence would not stand because it must be supported by a finding of at least one aggravating circumstance. On the other hand, the judge didn't have to have the verdict forms at all and they just could have come back with a death sentence and nobody would have known what it underlayed and that would be okay too? No, they must make that finding on aggravators and they must make the finding on weighing if they have selected a death sentence. Under state law, there has to be a definite finding that is communicated at the end of the case? There has to be findings by the jury communicated at the end of the case, yes. So if I understand you correctly, really the purpose of the verdict form with respect to aggravators is solely as to the death penalty, is that correct? That is correct. And if you have a jury that for whatever reason doesn't vote for the death penalty but votes for some form of a life sentence, then there's no requirement in Nevada that those death penalty forms, in other words, the aggravator, be determined, is that correct? No requirement in Nevada and no requirement under the federal constitution. But you have a death penalty. In other words, you would never uphold a death penalty without a written aggravator form, correct? That's correct. Those questions arise out of the Eighth Amendment's cruel and unusual punishment clause where the Supreme Court required those findings to narrow the class of people eligible for the death penalty and to help channel the jury's discretion to make sure they're focusing on, it's an individualized decision, focusing on the defendant and his particular characteristics and attributes. It's required under the Eighth Amendment to uphold a death sentence. Is the weighing determination of the same variety, that is if there has to be a communicated determination at the end of the case that the jury in fact determined that the aggravators outweighed the mitigators? If they have selected a death sentence, absolutely. They must make a finding that the mitigators were insufficient to outweigh the aggravators. Let me ask you the flip side, which I also ask the opposing counsel. Let's say, and the question I asked, I believe, I hope I'm phrasing it the same way. If they make a determination, as they seem to have made in this case, that mitigating and aggravating factors, must they, under Nevada law, go to the next step and decide whether he's death eligible? Or can they simply go to the penalty and say, we're going to talk about life, not consider death in our discretion? If they, for whatever reason, choose not to discuss death, do they have to make a determination whether he's death eligible? I'm not sure I understood the question. He could be death eligible, right? And yet the jury could say he's eligible for death, but we, in mercy and justice, choose to give him, alas, a sentence. That is a way the jury could go, yes. So if the jury decides not to make the death eligibility determination and moves directly to the sentence, is that a violation of Nevada law? They're not considering death. They say, well, we're just going to talk about life, the various life. As long as they consider only that evidence, which they're entitled to consider for each of those questions, that is not a violation of Nevada law to my understanding. How do you square that with a statute? How do you square that with a statute that says the jury shall determine all of these matters? The jury shall determine. They have to make a written finding as to an aggravator. That's one of the requirements before death eligibility. But the statute's pretty specific. It doesn't say the jury can weigh mitigating and weigh aggravating. It says the jury shall determine. Now, I understand that to be for evidentiary purposes, to make sure that they are looking at the appropriate evidence and considering it only for the appropriate question. There's nothing constitutional about it. The question was under Nevada law, not constitutional. Under Nevada law, I don't know that there's any way that we could stop a jury from going back and forth on these questions and reconsidering reaching the aggravators and then going on to weighing and then going back to aggravators. They may very well start at what sentence is appropriate in this case. Now, how do we get there legally? How do we find is there an aggravator to support what we want to do? I think juries are given that kind of broad discretion. What if the jury had been given a form that asked it directly, do you find, yes or no, the aggravators outweigh the mitigators? The jury found the aggravators do not outweigh the mitigators. Then the jury goes on to determine what the penalty should be short of death, and it hangs on that question. What is the effect, if any, of the jury's determination entered onto the jury form that I've just now hypothesized that the aggravators do not outweigh the mitigators? Is that a, quote, acquittal under Bullington of the death penalty? Are you suggesting that form was somehow returned in court? Yes. Then we would be talking about a bifurcated proceeding. That's the only instance in which that would be returned in court without a final penalty being selected, and they would not be allowed to go on to that final penalty selection. Assuming that the judge had no authority to ask the jury to return not only the two forms he asked, but just select a positive third form, and they returned all forms that said there's an aggravator, there are more mitigators, mitigators outweigh the aggravators, they have no authority, the judge has no authority to say that I want to see what you've determined about the death penalty, and then says to them, is this your final decision? I don't think that's constitutionally required. No, I didn't ask you that. I said, could the court do that? You said there's no way they could do it. Could the judge ask, have you determined these three issues finally? The courts have discretion and authority to bifurcate penalty hearings in Nevada. In that scenario, they could ask for a return of the aggravator form and the weighing form. This was not a bifurcated hearing, was it? This was not bifurcated. Under Nevada law, must that be done at the beginning of the hearing, or can it be done any time during the process? You can't bifurcate it once you've already gone to the jury. I hate to interject, but I have not had my question answered yet. What happens if the judge submits a form asking the jury as to whether or not the aggravators outweigh the mitigators, the jury says the aggravators do not outweigh the mitigators, it then hangs on the question as to whether it should be life with or life without. What is the effect, if any, of the jury form that has been filled out by the jury when they say the aggravators do not outweigh the mitigators? I've done my best to answer your question, and I will try again. Well, you got sort of pulled off in different directions. So what's the answer to that question? Well, I think that's the same question over here. That's not the same question. Just focus on my question. They would never ask for those verdict forms in court, as was done here. Those forms were not asked for. The hypothetical is that question was asked on a jury form. Right, and the judge asks for those forms in court as a final verdict even though they've not selected a sentence? That's my question. And they've hung on the question as to whether or not it can be life with or life without. What's the effect of the jury filling out the form that says, that basically takes the death penalty off the table? They say aggravators do not outweigh the mitigators. I would say no effect because they have not selected a sentence. That's a practical matter, though. Excuse me, I'm still asking a question. What then happens to Bullington? What does Bullington mean then? Bullington said that when a sentence less than death is selected and there are findings that is based upon imposition or decision of facts sufficient to entitle you to that life sentence, that's an acquittal. But it said not just the facts alone. These forms alone are acquittal. The imposition of a lesser sentence accompanying those findings of fact would be an acquittal. I'm having trouble following some of your answers as to whether these forms are even necessary at all because in the statute, well, subsection 4 goes, the person convicted of murder of the first degree shall be punished. It goes through the options. It also says a determination of whether aggravating circumstances exist is not necessary to fix the penalty at imprisonment for life with or without the possibility of parole. So my question is how does that statement interact with all of the assumptions that seem to be being made that they were required to fill out the forms and reach some judgment on the death penalty before they even got to life when the statute itself says it's not necessary? Well, I think they can jump right to life if they want. They're not required to fill out those forms in any particular sequence except for ensuring that they look at only the appropriate evidence that was admitted on those particular questions. Can I clarify on that? The verdict forms that I do believe, special verdict forms that the judge did receive before discharging the jury, one was the, I believe that's the case, so he got the special verdict that checked murder involved mutilation, or she did,  they could have, the prior question said if there was zero. It doesn't ask them to check zero. I take it if they had handed to the judge a special verdict form of this nature, but neither one nor two was checked, and they went ahead, however, and checked off all of the mitigating factors as they did, and then they came in and they said that they were considering death. Would they be precluded under Nevada law from even getting to death if they had not made the prior verdict determination about an aggravating factor? Are you talking about under Nevada law or under the Constitution? Under Nevada law. I'm just trying to understand, you know, these things, as you said, they go through a sequence, but if there is one of the, either the, there was no finding of an aggravator, which would be the key thing here, I would say, could they even be considering death then, or would they be on the final verdict form here, be limited to everything under death? Under Nevada law, there certainly is a sequence, and they're told to start with that question about aggravating circumstances. I don't believe that is constitutionally required. Well, okay, so they come in then with death, okay, and the verdict forms are now all signed off, and they've signed off on death, but there's no aggravating factor found. Is the death penalty then as a matter of law under Nevada law off the table? And you said it was an Eighth Amendment requirement, so would it also be off as a matter of constitutional law, or would they have to go back and make an affirmative determination whether there was an aggravator? It wouldn't be a valid death sentence unless there was any finding of at least one aggravating circumstance beyond a reasonable doubt and that the weighing, there was insufficient mitigating evidence to outweigh the aggravator. So to give you one more, because this, talk about all these hypotheticals, but let me go back to what actually happens when you're in a criminal trial. Under the Nevada law, as I understand it, what the statute says, if you seek the death penalty, but the jury can't reach a unanimous verdict, then the district court can impose life without the possibility of parole or impaneling the jury, correct? Yes. So your answers before about what would happen to these verdict forms, it doesn't really comport with what the law is. I mean, that's not what would happen. If you come to the end of the trial and the jury can't reach a verdict and the judge feels that there's no further appropriate deliberations, then doesn't this statute kick in in terms of you either get life without parole or you get a new jury impaneled and you go back to the drawing boards and the death penalty is back on the table? I agree. The statute kicks in. If they cannot reach a unanimous verdict, ask for the ultimate sentence, then the judge does. I've only seen that done once before where the judge has not allowed us to go back and retry. The judge does have the authority to impose a life without sentence, but 99 percent of the time they will impanel a new jury. That decision is for the trial judge to make as to whether to permit a new panel and a retrial, but the judge could impose the life sentence. Yes. Here's one more hypothetical, which I'm sure you're not excited about. But suppose, because there have been so many hypotheticals, but suppose the jury had come back with a note that said, signed by all the jurors, and it said, we have determined that there is an aggravator. We have determined there are many mitigators. We have decided that the mitigators outweigh the aggravators. However, we can't decide on life without parole versus life with parole, and therefore we're hung, and it was signed by all the jurors. Then what? Would that be a determination that could be redone, or would it be a final determination if there was no death penalty? Well, just like the notes in this case where it came 9-3, we're hung between life with parole. No, no, but I'm positing a note signed by all the jurors. It's still not an official verdict. A note from the jury room, even if signed by all the jurors, is not an official verdict. Let me ask you something about that, and that's your answer. Your answer is it doesn't count because it's not an official verdict. Do you have the verdict forms to look at? I do. Can you get them? I just want to make sure I understand what that answer means. There are four verdict forms that the jury was sent out with. Okay. And two of them in the record, as I have it, are signed and there's a checkmark. One of them is a special verdict form finding the aggravator. The second one has all those checkmarks and finding the mitigators, and also signed. And then there are two additional forms which are not signed. Now, I notice that the two forms that are signed are stamped, have a clerk's office stamp with an exact date and time. I can't quite read what the stamp says, but I assume it's the usual stuff that clerk's office stamps say. Does it say filed or does it say? It looks like a usual court clerk file. The reason I'm asking is because we also have a stamp for received or lodged items. It's not quite filed, but our clerk's office stamps are this. We got it, went out, for whatever reason, authorized to file it. I think this is a filed stamp, right? Yes, this is a filed stamp. Now, why isn't this, as opposed to the two forms that are not signed and that don't have such stamps, why is this not, in fact, a verdict form that's been accepted if it's been taken, filed? I think the file stamp is an error, and it should have been marked something more along the lines of received. The transfer bears out that the jury was excused and discharged without giving any verdict in court, and the verdict forms were simply collected after the fact, after the jury was already gone. Well, but it is what it is. It is what it is. We can't go around collecting state records. So I was really following up on what I heard you, the answer to Judge Berzon's question. You said that form, the hypothetical piece of paper that she posited, would not count because it was just a note. It wasn't an official verdict form. But this is an official verdict form, and it is, as you told me, again, I can't read the stamp, but as you've represented, this is, in fact, a file stamp. What else do you need to make something an official verdict form? Well, that's an aberration, and I don't think it's necessary for a resolution of this case. I'm fine accepting these two verdict forms that are file stamped. It says that we found an aggravating circumstance beyond a reasonable doubt. So what would you do? Let's say this proceeding didn't exist, or, you know, we went away or whatever, and you went forward with your state penalty phase hearing, let's say the state trial court allows you to do that. What would happen to these two pieces of paper? Would the defendant start off with an aggravator and a whole bunch of mitigators before the next jury? Would these things count or not? Absolutely not. Aside from the fact that an official verdict must be announced in court, which these were not, one jury must be. Stamp says filed in open court. Is there a statute? I mean, in other words, you say that and it sounds right, but where does that come from? You keep saying it must be announced in open court. Is that a Nevada statute or a Nevada procedural rule? That may have been in my response to the petition for writ of mandamus to the Nevada Supreme Court. It is in one of the briefs where we talk about what is. Well, no, it doesn't matter. It might be in a brief, but what's the support for it besides your statement? Well, I mean, otherwise we have some vagaries here that there's no polling of the jurors. Is this your final verdict is right? Either you don't know. Do you have a case or a statute? Is there a case, is there a statute, or is it just that at this point you're not sure what the source of your statement is? I believe there are cases and statutes that I don't have at the tip of my tongue. I believe they are in my brief. Mr. Owens, I just want to be sure. We've got lots of hypotheticals here, but before we finish up, I want to be sure that you and the defense counsel are in agreement on this. I understood her to say, and I think you said, that whatever the hypotheticals might have been in this case, the jury was discharged. They were gone before these special verdict forms, signed and unsigned, were collected. That's not reflected in the transcript. The transcript says that the judge asked before discharging whether there were any signed and that they were handed up to the bailiff. She asked that they be handed in. The judge never said, file them. I received them as final verdicts. They were received. They were before the judge, before the judge discharged. There was a discussion that we will collect them. Has the jury completed any of the verdict forms for a person? Yes. Would you please hand those forms to my bailiff? All of them are addressed. All of them, please. All right. Having said that, based on the fact, and then she discharges them. But where's the reading of the verdict and the assent of the jurors in court? Is this your verdict as read? That may be, but the judge had the verdict forms before she discharged the jurors. The court had them. The record shows she didn't read them, right? It doesn't regard it. I understand. It does not reflect that. The court explained in open court that if the forms were turned in, showed no aggravators, that would be an acquittal of the death penalty. That's what the judge said. That was the judge's opinion, and I would have argued against that, yes. And then he collected the form. He said, I don't expect to answer all the questions, but he collected the forms in order to decide what to do. And if there had not been a finding of an aggravating circumstance, that judge may very well have barred the death penalty, and I may have sought a writ to the Nevada Supreme Court, because under Bullington and Rumsey, in the absence of a selection of a lesser sentence, those findings do not have any effect for double jeopardy purposes. It's the imposition of a lesser sentence with those findings that would then bar the double jeopardy. I think I'm out of time. I'm sorry to take just one more minute. Then what does it mean when you said the state court can and does have a split penalty hearing? It's not a creature of statutory right in Nevada, but some judges have sought to bifurcate penalty hearings, and the Nevada Supreme Court has reviewed that and said that's permissible. I just meant on the ground, what does that mean? How does a bifurcated penalty hearing look like? The jury goes back? The jury would not be given a form on the ultimate selection of a penalty. Evidence would be presented on the aggravating circumstances and on the mitigating circumstances, and they would be given forms like we saw in here. One question you haven't answered is, do you regard the weighing determination as a factual determination which if reached, and we knew it was reached, would be an acquittal or not? No. A weighing is unlike a guilty, not guilty, or a finding or not finding of the existence of an aggravating factor. Weighing of intangibles and those variables is far removed from what they were looking at in Bullington when they carved out this narrow exception to sentences for double jeopardy purposes. It's got to be focused on the finding of aggravators, not on weighing. I don't think you finished answering my question. Bifurcation, just answer simply. I think bifurcation means the jury goes back twice. Yes. Okay, what would happen the first time they come back? What would they be determining? They would be determining the finding of aggravating circumstances and the weighing. It could be trifurcated, and those two terms could be... Death eligibility. They'd be asked, is this defendant death eligible? Yes. I don't want to put words in your mouth. I'm just trying to make sure I understand. If they come back and they say, this defendant is not death eligible, bam, at that point it stops, right? Both as a matter of state law and as a constitutional matter. They would never be given a verdict form to select death. And they couldn't be, because at that point you'd have, in fact, a verdict, a partial or a verdict that he's not death eligible. And at that point they would go back and only be able to select from among the life options. Yes, if it was bifurcated, yes. Okay, I just wanted to understand that. And why can't the judge, in response to a request, ask a jury to determine whether that's what happened, that they have voted him not to be death eligible? And if the jury comes back and says, we have unanimously decided he is not death eligible, why is that not an acquittal of the death penalty? Because absent a bifurcation, which is not constitutionally required, there's no need for or there's no requirement that there be this process that we go through and submit these separate forms. There's no requirement, but I said you have a hearing such as this. And the judge says to the jury, will you please fill out a form that says, have you found him not to be death eligible? And they return that form unanimously. You would say that that does not bar a new trial because they didn't say in advance that this is a bifurcated proceeding? I think the determination would be needed to be made early on before we present the evidence in the case. Yes, it would need to be bifurcated so that everyone knows what questions we're moving forward on and what verdict forms the jury will be asked to return. Okay, thank you. Thank you. Both sides have taken extra time. We'll give you two minutes for rebuttal. Thank you. Judge Graber, I apologize. I don't recall the precise question. The question had to do with what if the judge, instead of discharging this jury, had sent it back for further deliberations? Even though the jury had previously discussed life sentencing options, whether they could have changed their mind about that and put all potential sentences back into their discussions and, in fact, ultimately impose the death penalty, having found beyond a reasonable doubt one aggravating factor which made him death eligible? I don't believe they could, and here's why. There are four ways the defendant in Nevada can be acquitted of the death penalty. The jury could find him not guilty of first-degree murder. The jury could find no aggravators. The jury could find that mitigators outweigh the aggravators, or the jury could impose a sentence of less than death. When the jury goes into the penalty phase, having returned a guilt phase verdict, they don't get the opportunity to go back in and re-evaluate that decision. If a jury came back out during a penalty phase and said, we changed our mind on guilt, they would be shut down immediately. The sentencing is a unitary thing, and they did, in fact, find him death eligible because they found an aggravating factor. And if they had so far in their discussions weighed it this way or that way, what would prevent them, if they continued as the same jury, to deliberate from saying, you know, that conversation we had earlier about weighing, I'm uncomfortable, I think now it should be weighed this way as a moral judgment. Why couldn't they do that? First, under Nevada law, the finding of aggravators alone is not enough for eligibility. You have to have that weighing decision. At the point that a formal verdict was taken by the court, when the court says, go back in and decide this matter, is he eligible? If the jury came back out and said no, as it does in a bifurcated proceeding. And I submit that the constitutional right to know if your jury is acquitted, you cannot fall on the purely discretionary decision of a trial court to bifurcate or not bifurcate. In either circumstance, the defendant has to be entitled to know. Why doesn't that have to be at least requested up front? Why doesn't the, if the defendant wants to lock the jury into a decision to make him eligible or not, why isn't that something in fairness to the state, which has to put on its evidence, and the way it presents its, whether it's cross-examination and so on, its argument, why isn't that the question you ask up front? Look, we want the jury to determine their eligibility, come back with a verdict, a formal verdict, a formal decision saying he is death eligible or he's not death eligible before they go on to the next step. If he doesn't make that request, why isn't it exactly what Judge Gabel suggested? Yes, and that is they've made a decision, but, you know, it's a difficult decision. They think about it some more. They change their mind. I apologize for not knowing if that request was made in this case. I came into the case far later, and that's something I should know. Well, assume it wasn't made. But... Assume it wasn't made, and the judge is going to dismiss the jury. Right. And the defense lawyer wants to know whether they have acquitted him. Not, if you go back and deliberate anymore, you're going to be dismissed. Right. And they ask, well, have you reached a final decision? Not a tentative decision, but have you reached a final decision, that you're satisfied is your final decision? And then they say, yes, we are. We have eliminated the death penalty. Why wouldn't the judge have the authority, and why shouldn't the judge, ask them that question? The judge should ask that question. That's what we asked for here. I think under the facts here, the judge was obligated to ask that question before dismissing this jury. Not before sending them back, but before dismissing them. That's correct. Thank you. Okay. Thank you very much. Case is argued, stand submitted. Roger. All rise.
judges: Hearing Panel: Hug, Reinhardt, Silverman, en Banc Panel: Kozinski, Reinhardt, Thomas, Graber, McKeown, Wardlaw, Fletcher W. , Fisher, Berzon, Clifton, Smith M.